UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SLOAN P. STANLEY,

            Plaintiff,

    v.

MASON COUNTY JAIL, *et al.*,

            Defendants.

CASE NO. 3:21-cv-05860-MJP-JRC

REPORT AND
RECOMMENDATION

NOTED:  May 6, 2022

      This matter is before the Court on plaintiff's application to proceed *in forma pauperis* ("IFP") (Dkt. 13) and proposed complaint under 42 U.S.C. § 1983 (Dkt. 16) and on referral from the District Court.  Plaintiff is incarcerated at the Mason County Jail and proceeds *pro se*.

      The Court previously screened plaintiff's proposed complaint under 28 U.S.C. §§ 1915(e) and 1915A and warned plaintiff that it failed to state a viable claim.  Plaintiff has amended his proposed complaint, but it continues to suffer from the same or similar deficiencies that led the Court to enter the show cause order.  Having offered plaintiff the ability to amend his complaint

1    and received a complaint suffering from the same deficiencies, the Court finds that further

2    opportunities to amend would be futile and recommends dismissal of this matter.

3                                    **BACKGROUND**

4              Plaintiff initiated this matter in November 2021.  Dkt. 1.  The Court previously informed

5    plaintiff that his complaint was deficient and that the Court would decline to rule on his IFP

6    motion until plaintiff presented the Court with a viable complaint.  Dkt. 14, at 1–2.  Specifically,

7    the Court informed plaintiff that (1) naming Mason County Jail (rather than Mason County) was

8    inappropriate, (2) he had not plausibly alleged liability by the County under *Monell v. N.Y.C.*

9    *Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978), (3) he had not plausibly alleged any actions

10   by defendant Hanson, (4) his allegations that the jail required him to use a safety pencil or go to

11   the library to use a pen could not amount to a violation of his right to access the courts, (5) his

12   allegations that he was not allowed to use dental floss could not amount to a violation of the

13   Fourteenth Amendment, as articulated, and (6) his allegations that he did not have television or

14   newspaper could not amount to violations of his constitutional rights, as articulated.  *See*

15   *generally* Dkt. 14.

16             Plaintiff has filed an amended complaint in response to the Court's Order.  Dkt. 16.  He

17   now names Mason County as a defendant and alleges similar claims as in his first proposed

18   complaint, although he also appears to include claims related to lack of sheets and caffeinated

19   coffee.  Dkt. 16, at 14.  He has also filed a supplement to his amended proposed complaint,

20   which the Court also considers in the analysis below because plaintiff appears to have intended it

21   as a supplement incorporated into his amended proposed complaint.  Dkt. 17.

22   ///

23

24

REPORT AND RECOMMENDATION - 2

1

**DISCUSSION**

2

**I.  Legal Standard**

3      A complaint must contain "a short and plain statement of the claim showing that the

4  pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

5  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

6  conclusory statements, do not suffice" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

7  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge

8  unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.

9  2009) (internal quotation marks and citation omitted).  While factual allegations are accepted as

10  true, legal conclusions are not.  *Iqbal*, 556 U.S. at 678.

11

**II.  Access to the Courts**

12      In his prior complaint, plaintiff alleged that requiring him to either use a safety pencil or

13  to go to the jail law library to use a pen violated his right to access the courts.  *See* Dkt. 1-2, at 6.

14  The Court explained that because plaintiff showed neither deprivation of the capability of

15  bringing an action nor an actual injury, he had not alleged a viable claim of lack of access to the

16  courts:

17              The right of access to the courts ensures a "reasonably adequate opportunity
          to present claimed violations of fundamental constitutional rights to the courts,"
18      although it does not create a freestanding right to prison law libraries or legal
          assistance.  *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (internal quotation marks and
19      citation omitted).  The right of access to the courts "guarantees no particular
          methodology but rather the conferral of a capability—the capability of bringing
20      contemplated challenges to sentences or conditions of confinement before the
          courts."  *Id.* at 356.  It is this "capability, rather than the capability of turning pages
21      in a law library, that is the touchstone" of the right of access to the courts.  *Id.* at
          356–57.  Because the right of access to the courts is not an "abstract, freestanding
22      right to a law library or legal assistance, an inmate cannot establish relevant actual
          injury simply by establishing that his prison's law library or legal assistance
23      program is subpar in some theoretical sense."  *Id.* at 351.

24

1

Moreover, plaintiff must show that he suffered an "actual injury" that was caused by defendants' actions to prevail on a claim of violation of the right to access the courts. *See id.* at 354–55. That is, plaintiff "must show that official acts or omissions 'hindered his efforts to pursue a [non-frivolous] legal claim.'" *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009) (quoting *Lewis*, 518 U.S. at 351 (alteration in original)).

2

3

Here, plaintiff's allegations fall short of a colorable claim of denial of access of the courts. He alleges only that he believes his legal work must be done in ink (but acknowledges that he has not been held to such a rule) and that he prefers to use a pen. Dkt. 1-2, at 6. He fails to allege that jail staff's actions have plausibly hindered efforts to pursue a nonfrivolous legal claim. Plaintiff's allegations are inadequate to create a viable claim of denial of the right to access the courts.

4

5

6

7

8      Dkt. 14, at 4–5.

9      Plaintiff's amendments to his claim do not render it viable. His allegations fall short of

10    showing that he is being deprived of the capability of bringing legal actions or that he is

11    suffering actual injury. He acknowledges that he is allowed to use a flexible pencil but asserts

12    that the pencils are inadequate because they do not produce a dark ink. Dkt. 16, at 5–6. He also

13    acknowledges that he may use a flexible pen "in the visitor's booths at night" upon request but

14    takes issue with the jail prohibiting regular pens. Dkt. 16, at 7–8. He does not specifically point

15    to any nonfrivolous legal claim that he can plausibly allege has been hindered. In a supplemental

16    document, he argues that it is unconstitutional to prohibit prisoners from having pens, but he

17    does not allege that he is being deprived of writing implements. *See* Dkt. 17, at 7.

18    Plaintiff also cites the test from *Turner v. Safley*, 482 U.S. 78 (1987), but application of

19    *Turner* is not necessary unless plaintiff establishes an actual injury to his right to access the

20    courts, which plaintiff has failed to do. *See, e.g.*, *Rhinehart v. Cambra*, No. C 97-4272 VRW

21    (PR), 1999 WL 281104, at *1 (N.D. Cal. Apr. 30, 1999). The need to request extensions of

22    deadlines is not, standing alone, an actual injury. *See, e.g.*, *Hysell v. Pliler*, No. 04-0355, 2007

23    WL 2559022, at *2 (E.D. Cal. Sept. 4, 2007) (denying motion for preliminary injunction based

24

REPORT AND RECOMMENDATION - 4

1  on lack of access to courts because the plaintiff had "not alleged that he has been prevented from

2  meeting a deadline," had "obtained an extension of the earliest deadline in this case," and

3  because "the court [was] willing to entertain requests for reasonable extensions of time"), *report*

4  *and recommendation adopted*, 2007 WL 3245311 (E.D. Cal. Nov. 2, 2007).

5  ### III.  Dental Hygiene

6      In his prior complaint, plaintiff alleged that lack of dental floss at the jail violates the

7  Fourteenth Amendment.  Dkt. 1-2, at 12.  The Court assumed without deciding that the

8  Fourteenth Amendment (rather than the Eighth) applied to plaintiff's claim and explained that he

9  had not alleged a viable claim:

10          "Pretrial detainees are entitled to 'adequate food, clothing, shelter,
    sanitation, medical care, and personal safety.'" *Alvarez-Machain v. United States*,
11      107 F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246
    (9th Cir. 1982)).  To state a claim of unconstitutional conditions of confinement
12      against an individual defendant, a pretrial detainee must allege facts that show:
            (i) the defendant made an intentional decision with respect to the
13          conditions under which the plaintiff was confined; (ii) those
            conditions put the plaintiff at substantial risk of suffering serious
14          harm; (iii) the defendant did not take reasonable available measures
            to abate that risk, even though a reasonable official in the
15          circumstances would have appreciated the high degree of risk
            involved—making the consequences of the defendant's conduct
16          obvious; and (iv) by not taking such measures, the defendant caused
            the plaintiff's injuries.
17      *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).
            Whether the conditions and conduct rise to the level of a constitutional
18      violation is an objective assessment that turns on the facts and circumstances of
    each particular case.  *Id.* However, "a de minimis level of imposition" is
19      insufficient. *Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979).
            Courts have generally held that the deprivation of dental floss is not a
20      serious enough harm to create a cognizable Fourteenth Amendment claim. *E.g.*,
    *Andrich v. Arpaio*, No. CV1602111PHXDJHJZB, 2016 WL 11631346, at *8 (D.
21      Ariz. Dec. 13, 2016); *Firor v. Hardinger*, No. CV JFM-15-2875, 2016 WL
    4491715, at *3 (D. Md. Aug. 24, 2016) ("The deprivation of dental floss, is simply
22      not so repugnant to the conscience or incompatible with the evolving standards of
    decency that it satisfies the seriousness prong of a deliberate indifference claim.")
23      (internal citation omitted); *Gomez v. Westchester County*, No. 12-CV-6869, 2015
    WL1054902, at *8 (S.D.N.Y. Mar. 10, 2015) (detainee's allegation regarding his

24

1    inability to obtain dental floss did not establish a sufficiently serious medical need),
     *aff'd*, 649 Fed. App'x 93 (2d Cir. 2016).

2            Having reviewed plaintiff's allegations, the Court finds that he has not
     pleaded such a serious harm from the lack of dental floss at the jail as to implicate
3    the Fourteenth Amendment.

4    Dkt. 14, at 5–6.

5            Plaintiff continues to allege that it violates the Fourteenth Amendment for the jail to

6    forbid him from using dental floss. Dkt. 16, at 10. He states that on a prior occasion (before his

7    current confinement in the jail) he suffered a cavity that caused him to require a tooth extraction

8    and that he fears the same scenario will occur again. Dkt. 16, at 10. These allegations do not

9    render his claims viable under the authority provided in the order to show cause and cited above.

10   Plaintiff cites cases about deprivation of toothpaste, but courts have distinguished between the

11   deprivation of toothpaste and of dental floss in this area. *See Pigues v. Solano Cty. Jail*, No.

12   2:15-CV-1005 KJN P, 2015 WL 2358647, at *3 (E.D. Cal. May 15, 2015) (distinguishing

13   between dental floss and toothpaste cases). Plaintiff's arguments fail to show that this claim has

14   merit or is cognizable in a Section 1983 action. *See* Dkt. 17, at 12–13.

15       **IV. Television**

16           In his prior complaint, plaintiff alleged that lack of television and newspapers in the jail

17   violated his rights to freedom to obtain information and to be free from cruel punishment. Dkt.

18   1-2, at 13. The Court explained—

19           Prisoners have a First Amendment right to receive published materials,
     including news materials, subject to reasonable limitations. *See Pell v. Procunier*,
20   417 U.S. 817, 822 (1974). "But that right does not create an affirmative duty on
     prisons to provide news publications [or television news broadcasts] to inmates."
21   *Collins v. Burl*, No. 2:11-CV-40-DPM-BD, 2011 WL 2457532, at *1 (E.D. Ark.
     June 17, 2011) (ruling that prisoner's claim failed as a matter of law where
22   defendants did not themselves provide prisoner with published "material or access
     to television news").
23           Further, there is no constitutional right to watch television in prison. *James
     v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992) (denial of television does
24

not constitute a cognizable civil rights claim); *Murphy v. Walker*, 51 F.3d 714, 718, n. 8 (7th Cir. 1995) (per curiam) (same); *Gladson v. Rice*, 862 F.2d 711, 713 (8th Cir. 1988) (same); *Montana v. Commissioners Court*, 659 F.2d 19, 23 (5th Cir. 1981) ("The claims relating to the usage of radio and television were properly dismissed as frivolous. These claims do not pertain to federal constitutional rights."); *Manley v. Fordice*, 945 F. Supp. 132, 136-37 (D. Miss. 1996) ("[T]here is simply no right to television while incarcerated. . . . [S]uch items are luxuries, and any allowance of them in prisons is merely an altruistic act on the part of the Department of Corrections."); *see also Rawls v. Sundquist*, 929 F. Supp. 284, 291 (M.D. Tenn. 1996), *aff'd*, 113 F.3d 1235 (6th Cir. 1997) (no equal protection violation where death row inmates were denied satellite television because the denial "is within the wide-ranging discretion granted to prison administrators and does not impinge the Inmate Plaintiffs' constitutional rights").

Therefore, plaintiff cannot bring a plausible claim for a constitutional violation on the basis that the jail does not provide prisoners with television or newspapers.

Dkt. 14, at 6–7.

Notwithstanding this authority, plaintiff continues to argue that it is unconstitutional for the jail not to provide television and that the jail should allow prisoners to purchase televisions. *See* Dkt. 16, at 13. He does not appear to reallege his claims regarding newspapers. Plaintiff cites to *Turner*, but there is no occasion for the Court to engage in a *Turner* analysis when the right at issue is not protected under the First Amendment. *See* Dkt. 17, at 13.

**V. New Claims: Sheets and Decaffeinated Coffee**

Finally, plaintiff has included new claims in his proposed amended complaint, alleging that it is unconstitutional not to provide him with sheets for bedding and to provide only decaffeinated coffee. Dkt. 16, at 14. These claims are frivolous, and the Court finds that they could not be saved by amendment.

As noted above, plaintiff has the right to be free from punishment under the Fourteenth Amendment, to the extent that he alleges he is a pretrial detainee. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979). In assessing conditions of confinement for pretrial detainees, the Court considers whether the conditions amount to punishment, causing harm or disability

1    significantly exceeding or independent of the inherent discomforts of confinement, or whether

2    they merely result from some legitimate governmental purpose. *See Doe v. Kelly*, 878 F.3d 710,

3    714, 720 (9th Cir. 2017). The Court evaluates a pretrial detainee's Fourteenth Amendment claim

4    under an objective deliberate indifference standard. *See Gordon v. County of Orange*, 888 F.3d

5    1118, 1124–25 (9th Cir. 2018) (applying objective standard to medical care claims and

6    describing similar treatment afforded medical care and other conditions of confinement claims).

7    A pretrial detainee must demonstrate a defendant's acts or omissions were objectively

8    unreasonable, and identify objective facts indicating the "challenged governmental action is not

9    rationally related to a legitimate governmental objective or that it is excessive in relation to that

10   [objective]." *Kingsley*, 135 S. Ct. at 2473-74.

11        An institution must provide prisoners and pretrial detainees "adequate food, clothing,

12   shelter, sanitation, medical care, and personal safety." *Hoptowit v. Ray*, 682 F.2d 1237, 1246

13   (9th Cir. 1982); *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996), *overruled*

14   *on other grounds in Marley v. United States*, 548 F.3d 1286 (9th Cir. 2008).  However, prisons

15   or jails are not required by the constitution to be comfortable. *Rhodes v. Chapman*, 452 U.S.

16   337, 349 (1981).  Plaintiff does not allege that he is deprived of bedding but instead claims that

17   prisoners are not allowed to have sheets and are forced to use two itchy blankets, instead, when

18   they sleep on a mat.  Dkt. 16, at 16.  Case law does not support a viable Fourteenth Amendment

19   claims based on these allegations. *See Wood v. Young*, No. C18-983-MJP-BAT, 2019 WL

20   4889621, at *16 (W.D. Wash. July 12, 2019) (allegations of an uncomfortable bed insufficient to

21   state a Fourteenth Amendment claim), *report and recommendation adopted*, No. C18-983 MJP,

22   2019 WL 4187640 (W.D. Wash. Sept. 4, 2019); *Tarpley v. Jefferson Cty. Comm'rs*, No. 2:09-

23   CV-00199, 2010 WL 5135980, at *5 (S.D. Ohio Dec. 9, 2010) (pretrial detainees' allegations of

24

1   discomfort due to lack of sheets did not amount to a violation of the Fourteenth

2   Amendment), *report and recommendation adopted,* No. 2:09-CV-00199, 2011 WL 463101 (S.D.

3   Ohio Feb. 4, 2011). *Cf. Thompson v. City of L.A.*, 885 F.2d 1439, 1448 (9th Cir. 1989) (holding

4   that a pretrial detainee's "uncontroverted allegation that he was provided with neither a bed nor

5   even a mattress unquestionably constitutes a cognizable Fourteenth Amendment

6   claim"), *overruled on other grounds by Bull v. City & Cty. of S.F.*, 595 F.3d 964 (9th Cir.

7   2010) (en banc). Plaintiff's claim about decaffeinated coffee is also patently frivolous.

8        There is, moreover, an absence of plausible objective allegations plead indicating the

9   denial of caffeinated coffee or bed sheets (or, for that matter, the other conditions of

10  confinement) lacked a rational relationship to a legitimate governmental objective or was

11  excessive in relation to that objective. *Kingsley*, 135 S. Ct. at 2473-74. "[M]aintaining

12  institutional security and preserving internal order and discipline are essential goals that may

13  require limitation or retraction of the retained constitutional rights of both convicted prisoners

14  and pretrial detainees." *Bell*, 441 U.S. at 546. *Accord Jones v. Blanas*, 393 F.3d 918, 932 (9th

15  Cir. 2004) ("Legitimate, non-punitive government interests include ensuring a detainee's

16  presence at trial, maintaining jail security, and effective management of a detention facility.").

17  Corrections administrators "should be accorded wide-ranging deference in the adoption and

18  execution of policies and practices that in their judgment are needed to preserve internal order

19  and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547. In considering an

20  institution's policy or practice, the Court asks: (1) whether there is a "valid, rational connection"

21  between a regulation and a legitimate government interest; (2) whether alternative means of

22  exercising a right remain open to prisoners; (3) whether accommodating the asserted

23  constitutional right would significantly impact guards and other prisoners; and (4) whether ready

24

REPORT AND RECOMMENDATION - 9

1   alternatives are absent (bearing on the reasonableness of the regulation).  *Pierce v. County of*

2   *Orange*, 526 F.3d 1190, 1209 (9th Cir. 2008).

3          Here, plaintiff's own allegations belly his claims that the conditions he was subjected to

4   were punitive rather than incidents of his restraint and the jail's interest in maintaining security.

5   His pens were taken because of concern they could be used as a weapon; safety pens must be

6   used under supervision to avoid damage to cells; dental floss is disallowed for security purposes;

7   televisions were removed because they caused fighting over which channel to watch; coffee is

8   not caffeinated because some prisoners "drank too much coffee and got too wired"; and bed

9   sheets "have been associated with suicide."  *See generally* Dkt. 16.  Upon review, and despite his

10  legal conclusion that these restrictions are "punishments," plaintiff's allegations amount to

11  disagreement with jail officials over the best methods to ensure jail security rather than any

12  plausible allegation that jail officials are punishing pretrial detainees.

13         Plaintiff's amended proposed complaint fails to state a claim on its face and relies on

14  frivolous allegations that cannot amount to Fourteenth Amendment violations.

15  **VI.  Leave to Amend Would Be Futile**

16         Where a *pro se* litigant's complaint fails to state a claim upon which relief may be

17  granted, the Court generally grants the opportunity to amend the complaint.  *Lucas v. Dep't of*

18  *Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).  However, the Court may deny leave to amend if

19  "it is absolutely clear that no amendment can cure the defect."  *Id.*  Here, plaintiff would have to

20  abandon the claims asserted and allege an entirely new cause of action based on an entirely new

21  set of facts in order to proceed with this case.  This is more than the rule of liberally granting

22  leave to amend requires.  Moreover, plaintiff has been unable to successfully amend his claims

23  already, even with the benefit of the Court's order to show cause.

24

1

**CONCLUSION**

2          The proposed amended complaint should be dismissed without prejudice, and the IFP

3    motion should be denied as moot.  Dkt. 13.  The case should be closed.

4          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

5    fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

6    6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

7    review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

8    objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

9    *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

10   imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **May 6, 2022,**

11   as noted in the caption.

12          Dated this 19th day of April, 2022.

13

14                                                J. Richard Creatura
                                                  Chief United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 11